IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

WESTERN DISTRICT—PITTSBURGH, 1889.

## ROBERT STECKMAN v. J. J. SCHELL ET AL.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF SOMERSET COUNTY.

Argued October 17, 1889—Decided October 28, 1889.

In an action of ejectment against husband and wife, to recover land
purchased at sheriff's sale as the property of the husband, but claimed by
the wife, the controlling question whether the wife had acquired title in
her own right, with her own separate estate, and not in fraud of her hus-
band's creditors, having been submitted to the jury under proper instruc-
tions, their verdict was conclusive and no ground of reversal was shown.

Before STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM
and MITCHELL, JJ.

No. 190 October Term 1889, Sup. Ct.; court below, No.
451 September Term 1885, C. P.

On September 18, 1885, Robert Steckman brought ejectment
against John J. Schell and Rose B. Schell, his wife, to recover
several parcels of real estate, some of which parcels had been
divided into town lots. Issue.

At the trial on October 5, 1887, the plaintiff showed title in
himself for the parcels for which no disclaimer had been filed,

Charge of Court below.

under sheriff's sales thereof made to him upon judgments against John J. Schell, who had become insolvent, and with other evidence the plaintiff rested upon a prima facie case.   In defence it was shown that the legal title to the lands in dispute was in Mrs. Schell before the sheriff's sales, and testimony was introduced establishing, as it was claimed, that Mrs. Schell was possessed of a separate estate; that part of the real estate in dispute was purchased and paid for at the time with her own funds, and that other portions purchased on time were purchased by her solely on the credit of her separate estate, and afterwards paid for out of it, and from savings from the increase of her investments and from the profits of a tinning business in which she had been engaged with her son.

At the close of the testimony, in chief and in rebuttal, the court, JOHNSTON, P. J., 47th district, presiding, charged the jury:

Now, as it occurs to us, the whole question in this case was this: Had the defendant, Rose B. Schell, a separate estate sufficient to purchase this property, and did that estate really purchase it?   If so, it became her property in fact, as it is in law.   She had previously obtained a regular deed for these several pieces of land, prior to the sheriff's sale to Mr. Steckman, and that gave her the legal title.   The plaintiff, however, alleges that it was a fraud on the creditors, and therefore she only takes a trust title; that she is trustee for John J. Schell and his creditors.   This is the whole pinch of the case, gentlemen. The married woman's act, passed in 1848, provides that what belonged to a married woman prior to her marriage, or what accrues to her through any other person than her husband, is hers as absolutely after marriage as it would be before marriage, and it is under this clause in the act that she sets up defence here.   When she alleges that this property was bought with her own means, and not through means obtained from her husband, the laboring oar is with her; and she must satisfy a jury, by clear and satisfactory testimony, that she had a separate estate, and that that estate went into the purchase of this property and purchased it.   Now, that is, as we have stated, question of fact, and it is entirely for the jury. . . . .

[The first testimony offered by the defendants is the record

testimony showing that Mrs. Schell had a separate estate to such extent as they have shown by the records of Somerset county and by other evidence; that she had a title from her father which was her own, and would be her own, unless divested by her own act or the act of the law. It seems that that property culminated in about 1865, as Mr. Schell testifies; that he was at that time, had been for five years previously and five years afterwards, a banker in Somerset and in good circumstances. He stated himself to be worth at that time some $60,000. In that he is borne out to some extent by Judge Baer and by Mr. Colburn, and partially by Mr. Sanner, who testified, upon the other side, that he was apparently in very good circumstances. If he was in such circumstances as these witnesses testify, a gift to the amount of two or three thousand dollars to his wife would be legitimate, would be no fraud, because it is not shown that any creditor of that day was defrauded, or that there was any wrong done to any party.] [7]

But the defendants do not rest their case upon a gift. They rest it upon the fact that the money obtained by her, with its regular increase, constituted a fund sufficient to purchase this property. Now, you have his testimony positively as to this, and we may begin there. No matter what the fluctuations in the property would be, if it was her property it would remain hers, until a gift of it should be made by her to her husband, and the law does not presume a gift of that kind. Then you take the date of 1865, and his wife testifies to the arrangement between her husband and herself, agreeing in the main with his testimony, agreeing as well as witnesses would be supposed to agree after such a lapse of time, and she subject to an infirmity and not in the best capacity for taking care of her own estate. We have their testimony supplemented by that of Ankeny and young Schell, the testimony of both of whom was taken on a commission in a case between these parties. They testify, in corroboration of Mr. Schell and Rose Schell, that these Kansas City bonds were procured in 1865, and procured at the time that Mr. Schell swears they were, and for Mrs. Schell. These bonds, it seems, were obtained at ninety cents on the dollar and bore ten per cent interest. Mrs. Schell testifies that she received payments or dividends on these bonds, without being definite as to the amount. You heard her testimony upon that

subject.  Taking all this testimony together, does it appear to your minds clear and satisfactory that Mrs. Schell, the defendant here, had this amount of money derived from another source than from her husband; and, if so, did she place it in these properties?  The whole question, gentlemen, depends upon your view of this testimony.

We have stated to you that the testimony must be clear and satisfactory; that unless such testimony was scanned carefully it would leave great room for fraud as between husband and wife, so far as creditors are concerned; but in the inspection of this proceeding, so far as we observe the testimony, there was no person to be defrauded in 1865, nor until the failure of John J. Schell in 1870.  If this property was hers and went into the property for which this ejectment is brought, then, gentlemen, it would be her property, whatever else occurred, and no mismanagement or misconduct subsequent to that, no action on the part of her husband, would affect her title, if you are satisfied by clear and satisfactory evidence that she had the estate, and that with that estate the land was purchased.

*     *     *     *     *     *     *     *

A large number of points have been submitted to us.  The plaintiff asks us to charge you [inter alia]:

5. When property is claimed by a married woman as against her husband's creditors, she must show by evidence that is clear, positive, and satisfactory that she not only had the means of paying for it, but that her money actually did pay for it; and the unsupported testimony of husband and wife in cases of this kind, especially when the wife's testimony is that she knew nothing of the actual appropriation of her money to the property in dispute, and where there are material contradictions of their own and other testimony, is not sufficient to entitle her to hold the same against his creditors.  The testimony of husband and wife is only equal to that of one witness.

Answer: We cannot assent to this proposition in its precise terms, believing that the facts in evidence are sufficient to submit to the jury.[5]

6. That the declarations of an insolvent husband are not admissible to create title to property in his wife; and that his unsupported testimony on the trial as to the application of her money to the property in dispute, if doubt is cast upon it by

uncertain and contradictory statements of his own or other testimony, is not such clear, full, and satisfactory proof as is required to establish title in the wife as against her husband's creditors.

Answer: We make the same reply to this point as to the preceding one.[1]

The jury returned a verdict in favor of the defendants. A rule for a new trial having been discharged, judgment was entered on the verdict, when the plaintiff took this appeal, assigning as error, inter alia :

1, 5. The answers to the plaintiff's points.[1] [5]

7. The portion of the charge embraced in [  ][7]

*Mr. Valentine Hay* (with him *Mr. Isaac Hughes, Mr. G. H. Spang* and *Mr. R. C. Haderman*), for the appellant.

Counsel cited: Williams v. Davis, 69 Pa. 29; Hayden v. Mentzer, 10 S. & R. 332; Mast's App., 40 Pa. 28; Hallowell v. Horter, 35 Pa. 380; Lochman v. Brobst, 102 Pa. 486; Leinbach v. Templin, 105 Pa. 526; Blum v. Ross, 116 Pa. 168.

*Mr. A. H. Coffroth* and *Mr. W. H. Koontz* (with them *Mr. W. H. Ruppel*), for the appellees.

PER CURIAM :

The real estate in controversy was sold by the sheriff as the property of John J. Schell, one of the defendants, and purchased by the plaintiff, who afterwards brought this action of ejectment against Schell and his wife to obtain possession thereof. The interest of Mr. Schell, if any he had, in the land, was, of course, divested by the judicial sale, and, if he alone had been defending in his own right, the plaintiff would have been entitled to a verdict; but at the time of the sale, and long prior thereto, the legal title was in Mrs. Schell. Her contention was that she had acquired the title in her own right, with her own separate means, and not in fraud of her husband's creditors. Whether she did so or not was the cardinal question in the case. It was, of course, a question of fact exclusively for the jury; and to them the evidence was fairly submitted, with proper instructions as to its application. Among other things, the learned judge instructed the jury thus: "Had the defendant Rose B. Schell a separate

estate sufficient to purchase this property, and did that estate really purchase it? If so, it became her property in fact, as it is in law. She had personally obtained a regular deed for these several pieces of land, prior to the sheriff's sale to Mr. Steckman, and that gave her the legal title. The plaintiff, however, alleges that it was a fraud on the creditors, and therefore she only took a trust title; that she is trustee for John J. Schell and his creditors. . . . . When she alleges that this property was bought with her own means, and not through means obtained from her husband, the laboring oar is on her; and she must satisfy a jury, by clear and satisfactory testimony, that she had a separate estate, and that that separate estate went into the purchase of this property and purchased it."

The verdict in favor of the defendants is an unqualified affirmance of the position contended for by the defendants, and settles the controlling question adversely to the plaintiff.

It is unnecessary to notice specially either of the fifteen assignments of error relied on by the plaintiff. An examination of the record has failed to convince us that there was any error, either in the admission or rejection of evidence, or in the charge of the court, and answers to points submitted by counsel. The case hinged upon the question of fact to which reference has been made. It appears to have been carefully tried, and we find nothing in the record of which the plaintiff has just reason to complain. Neither of the specifications of error is sustained.

Judgment affirmed.